UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH A. TRUSSELL,

       Plaintiff,

v.                       Case No.  8:09-cv-811-T-33AEP

QUEST DIAGNOSTICS INCORPORATED,

       Defendant.

_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's
Motion for Summary Judgment (the "Motion" Doc. # 28), which
was filed on April 15, 2010.  Plaintiff filed a Response in
Opposition to the Motion on May 5, 2010 (Doc. # 40) and
Defendant filed a Reply (Doc. # 43) on May 24, 2010.  After
due consideration, the Court grants the Motion.

I.    **Factual Background**

Defendant is a nationwide provider of diagnostic testing,
information, and services, which operates Patient Service
Centers ("PSC") throughout the country, and a laboratory
facility in Tampa, Florida. (Sylvester Decl., Doc. 29-1 at ¶
2).  Plaintiff worked for Defendant as a Route Services
Representative ("RSR").  As an RSR, Plaintiff retrieved blood
samples from PSC's, doctor's offices, hospitals, and other
Quest Diagnostic customers along a specified driving route in
Tampa, Florida.  (Trussell Dep. Vol. 1, Doc. # 36-1 at 19).

Plaintiff served as an RSR from May 5, 2003, until he was terminated on June 26, 2008. (<u>Id.</u> at 42; Trussell Dep. Vol. 2, Doc. # 37-1 at 136).

### A.  <u>Plaintiff's Warning for Sexual Harassment</u>

In early 2008, one of the customers along Plaintiff's route accused Plaintiff of sexual harassment. (<u>Id.</u> at 150-153; Ex. 10 to Vol. 1 of Trussell Dep, Doc. # 36-3 at 2). According to Barbara Shaw, one of Defendant's Human Resources Generalists, the customer alleged that, when she bent down at her desk, Plaintiff looked down her shirt and made a comment about a tattoo located on "a hidden body part." (Shaw Dep., Doc. # 32-1 at 12).  Apparently, the customer "was extremely upset that [Plaintiff] was even able to see it.  And not only see it, but make a comment on it." (<u>Id.</u>)

Shaw testified that Plaintiff initially denied that he made the statement about the tattoo, and then Plaintiff eventually admitted that he commented on the tattoo, but offered the explanation that the tattoo was on the client's upper chest, closer to her shoulder, rather than on her breast. (<u>Id.</u> at 10-12).  Plaintiff was issued a formal written warning for his behavior. (<u>Id.</u> at 11; Trussell Dep. Vol. 2, Doc. # 37-1 at 153).

## B.  **Plaintiff's OSHA Complaint**

In March of 2008, Defendant implemented a new procedure that involved the RSR closing specimen bags with plastic wraps, also known as zip ties. (Trussell Dep. Vol. 2, Doc. # 37-1 at 178, 180, 182, 185-186).  Plaintiff was poked in the lip by a zip tie, and he claimed that he formed a blood blister from the poke.  Plaintiff notified individuals in Defendant's Logistics Department, specifically Mike Vasquez and John Kool. (Id. at 188; Doc. # 36-3 at 8, Ex. 11).

On May 15, 2008, Defendant's Environmental Health and Safety Manager, Pat Miller, became aware of Plaintiff's concerns.  On May 29, 2008, Plaintiff contacted the Occupational Safety and Health Administration "OSHA" to object to Defendant's use of the zip ties. (Trussell Dep Vol. 2, Doc. # 37-1 at 188-189).  As required by OSHA, a notice of complaint was posted in a public space at Plaintiff's place of employment. (Doc. # 40-2; Kool Dep., Doc. # 35-1 at 7).

Even though the posted complaint was technically supposed to be anonymous, an unknown person wrote "Joe" on the report, and both Sylvester and Kool noticed that Joe's name was on the report. (Id. at 8).[1]

---

[1] John Kool is an RSR Supervisor, and Plaintiff reported to Kool. (Doc. # 28 at 3).  Stephanie Sylvester is a Logistics

OSHA investigated Plaintiff's complaint and determined that Defendant's use of the plastic zip ties violated 29 C.F.R. § 1910.132(a). (Doc. # 40-2 at 1-5).

## C.  **Plaintiff's Unsolicited Client Communications**

Plaintiff sent a memo to Kool on May 1, 2008, just after being cited for sexual harassment, requesting a $500 bonus for good job performance. (Doc. # 36-3 at 1). Around this time, Plaintiff began distributing unsolicited letters to Defendant's clients on Defendant's letterhead. These letters stated:

Dear Client,

If you are pleased with the services that your courier Joe Trussell has been providing you, would you please share your feelings in writing and direct them to:

Stephanie Sylvester
Area Manager –Logistics
42225 E. Fowler Ave.
Tampa, FL 33617

Thank you very much,

The bottom of the client letters were signed "Joe" and just above the signature on at least one of the letters, Plaintiff handwrote: "Do not include this letter." (Doc. # 36-2 at 26).

---

Manger and she supervised Kool. (Id.)

Sylvester received one such letter in the mail from one of Defendant's customers, which contained positive comments about Plaintiff. The comments were hand-written directly on Plaintiff's type-written letter that Plaintiff had provided to the client. (Doc. # 28-2 at 2).

Sylvester believed that the unsolicited client letters were unapproved communications, especially because the letters only asked for positive feedback and requested that the client not include the actual letter with the feedback. Sylvester reported the letters to Pearl Simon, in Defendant's Human Resources Department, and Simon made the decision to terminate Plaintiff pursuant to the company policy regarding unapproved client communications. That specific policy is contained in Quest's Compliance Manual, and is titled "Printed and Published Materials." (Doc. # 45-2).[2] Furthermore, according to Plaintiff's supervisor, "Plaintiff's position was not one in which he should have been creating any written client communications." (Sylvester Decl., Doc. # 29-1 at ¶ 4).

Simon terminated Plaintiff on June 26, 2008, because

---

[2] The policy states in pertinent part: "The Compliance Department must review and approve printed and published materials before those materials are distributed." (Doc. # 45-2). The policy thereafter notes that "materials that must be reviewed include, among other things . . . client communications." (Id.)

within a very short period of time, Plaintiff violated two company policies: sexual harassment and unauthorized client communications. Simon specifically explained:

> This was a serious offense. I had an employee who is sending out letters on company letterhead soliciting feedback. Not even general feedback, but just favorable feedback and putting it in such a way as it appeared to be company communications which it clearly would not have been. We would never have sent something like this out. He was already on a written reprimand for another serious behavior. Given the combination of those two, there was no warning that I would give out to this employee. I made the decision to terminate his employment.

(Simon Dep., Doc. # 34-1 at 54).

Sylvester sat in on the meeting in which Simon terminated Plaintiff. (Sylvester Dep., Doc. # 31-1 at 44). During the meeting, Plaintiff admitted to Simon that he had distributed letters to clients without prior approval from the Compliance Department, and Simon terminated Plaintiff. (Id. at 45).[3]

## II. **Procedural History**

On January 16, 2009, Plaintiff filed a one count complaint in state court alleging that Defendant violated Florida's Private Whistleblower's Act, Florida Statute Section 448.102(3), et seq. (the "FWA") (Doc. # 2). Defendant removed

---

[3] Nevertheless, throughout this litigation, Plaintiff has claimed that the client communications at issue were actually approved by his former supervisor, Jacquelyn Connell.

the case to this Court on April 30, 2009, on the basis of diversity of citizenship. (Doc. # 2). On April 24, 2010, Defendant moved to dismiss this action on the basis of Plaintiff's alleged forgery of Connell's initials on a document (specifically, the unauthorized client letter). (Doc. # 18). The Court denied the motion on March 24, 2010. (Doc. # 27). Defendant now moves for summary judgment, and Defendant's Motion is ripe for the Court's review.

## III. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g

<u>Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment.  Samples ex rel. Samples v. City of Atlanta, 846
F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel
Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856
(11th Cir. 1988)).   However, if the non-movant's response
consists of nothing "more than a repetition of his
conclusional allegations," summary judgment is not only
proper, but required.   Morris v. Ross, 663 F.2d 1032, 1034
(11th Cir. 1981).

## IV. **Analysis**

Defendant was terminated approximately one month after he
lodged his complaint with OSHA concerning the plastic ties,
and he claims that he was terminated in retaliation for
lodging such complaint in violation of the FWA.

However, Defendant claims that it terminated Plaintiff
for completely unrelated conduct.   Specifically, Defendant
claims that it terminated Plaintiff because Plaintiff was
distributing letters to Defendant's customers on Defendant's
letterhead soliciting only positive feedback concerning
Plaintiff's performance.   Defendant viewed these letters as
inappropriate and potentially damaging to Defendant's image.
In addition, Defendant asserts that it terminated Plaintiff
because, prior to the unauthorized and inappropriate client

communications, Plaintiff was reprimanded for sexual harassment of a client.

### A.   __Prima Facie Case under the FWA__

In <u>Arrow Air v. Walsh</u>, 645 So.2d 422, 424 (Fla. 1994), the Florida Supreme Court recognized that the FWA was enacted "to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public." The FWA provides a remedy when an employer has retaliated against an employee who has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Florida Statute Section 448.102(3).

"Under Florida law, whistleblower's claims are analyzed using the same framework used for Title VII retaliation claims." <u>Bell v. Ga. Pacific Corp.</u>, 390 F. Supp. 2d 1182, 1187 (M.D. Fla. 2005).  Under this framework, to establish a prima facie case of retaliation in the absence of direct evidence of retaliatory intent, Plaintiff must show that: (1) there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action. <u>Id.</u> at 1187-88.

If a plaintiff is able to establish a prima facie case, the defendant is called upon to proffer a legitimate, non-retaliatory reason for the adverse employment action. Id. If the employer is able to assert such a reason, the plaintiff must come forward with evidence, which may include evidence of the prima facie case, sufficient to create a genuine issue of fact that the proffered reason is a pretext for unlawful retaliation. Id.

1. **Protected Activity and Adverse Employment Action**

In this case, Plaintiff reported Defendant to OSHA for unsafe workplace violations, and OSHA, indeed, determined that Defendant violated one or more of its regulations. Defendant does not contest that Plaintiff reported Defendant's use of the unsafe plastic ties to OSHA. OSHA regulations are "regulations" within the meaning of the FWA. Thus, Plaintiff engaged in protected activity under the FWA.

In addition, Defendant does not, and cannot, contest the fact that Plaintiff was terminated from his position. "Termination is an ultimate employment action that is undeniably adverse." Freyes-Torres v. City of Sanford, 270 F. App'x 885, 894 (11th Cir. 2008). Accordingly, the Court finds

that Plaintiff has satisfied the first and second prongs of his prima facie case under the FWA.

## 2. Causal Connection between Protected Activity and Adverse Employment Action

Plaintiff argues that he has established the causal connection between his protected activity and the adverse employment action because (1) there was a close temporal proximity between his OSHA complaint and his termination; (2) the decision-maker, Simon, was aware of his protected conduct of filing an OSHA complaint; and (3) under a "cat's paw" theory of retaliation, certain individuals with animus toward Plaintiff influenced the decision-maker to terminate Plaintiff. The Court will address these issues below.

### i. Temporal Proximity

In retaliation cases, to establish a causal link between the protected activity and the adverse employment action "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). In Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001), the court further remarked that "[t]he causal link element is construed broadly."

Plaintiff argues that the temporal proximity (approximately one month) between complaining about the dangerous plastic ties and being terminated "is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." (Doc. # 40). There is some support for Plaintiffs position. See e.g., Donnellon v. Fruehauf Corp., 794 F.2d 598, 602 (11th Cir. 1986) (holding that a one month lapse between the adverse employment action and the protected activity was sufficient to establish the causal connection required to state a prima facie case of retaliation); Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000)("For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'")(citing Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)).

However, this Court cannot end its analysis with Donnellon and Gupta. The case of Brungart v. Bellsouth Tele., Inc., 231 F.3d 791 (11th Cir. 2000), should also be considered. There, the court ruled that temporal proximity between the protected activity and the adverse employment action, standing alone, cannot establish a causal connection where there is no evidence that the decision-maker was aware

of the protected conduct: "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." Id. at 799.

## ii. **Decision-Maker's Knowledge**

In this case, Defendant has come forward with copious evidence that Pearl Simon, the decision-maker, was completely unaware of Plaintiff's protected activity. Simon filed two declarations in this case. In her first declaration, she indicated:

> I alone made the decision to terminate Plaintiff Joseph Trussel, and carried out the termination on June 26, 2008. Neither Stephanie Sylvester, John Kool, nor Barbara Shaw recommended that I terminate Trussell's employment. I made the decision after reviewing copies of letters that Trussell had distributed to customers, and after reviewing Trussell's file, which contained a sexual harassment warning.
> As of June 26, 2008, I was unaware of any alleged safety-related reports made by Joseph Trussell. For example, I had no knowledge whatsoever that Trussell had . . . reported concerns about the safety of using tie wraps to Quest Diagnostics; and/or filed a complaint about the safety of using tie wraps to OSHA. While I was aware that an anonymous OSHA complaint had been filed against Quest Diagnostics, I had no way of knowing that Trussell made the complaint.

(Simon Decl. Doc. # 29-2).

14

Plaintiff argues that Simon was aware of his anonymous OSHA complaint because, prior to terminating Plaintiff, Simon reviewed his personnel "file," and such file contained a letter dated June 2, 2008, commenting on Plaintiff's OSHA complaint.

The Court has carefully considered this argument and rejects it as wholly unsupported by the evidence. Defendant explains that, in response to an April 1, 2009, request for production from Plaintiff during the discovery phase of this case, requesting Plaintiff's "full and complete personnel file," Defendant produced to Plaintiff his file, as it existed on June 1, 2009. (Doc. # 43 at 4). Defendant explains that the document request at issue "was not a request for Trussell's personnel file as it existed at the time of his termination." Id.

Defendant has come forward with unrefuted evidence that Defendant first learned on August 21, 2008 (months after Plaintiff's termination) that Plaintiff was the person who filed the OSHA complaint. Specifically, Jodi Olivo, Defendant's Human Resources Manger, filed a declaration stating, among other things, that "OSHA first notified Quest Diagnostics of that charge by letter dated August 21, 2008. That correspondence was the first indication that Quest

Diagnostics received from OSHA that Joseph Trussell had filed the OSHA complaint related to tie wraps." (Doc. # 44-1 at ¶ 2).

Olivo also stated in her declaration that the June 4, 2008, letter from Pat Miller to Leslie Grove at OSHA was not part of Trussell's personnel file at the time of his termination. (Id. at ¶ 3). In addition, Simon filed a supplemental declaration explaining, "I did not review any documents in Trussel's personnel file related to the OSHA complaint." (Doc. # 45-1 at 1). Simon further explained that "at the time of Trussell's termination, I was unaware that Trussell had made an OSHA complaint, or that he had made any internal reports regarding the tie wraps." (Id.)

There is no evidence that the decision-maker was aware of the protected activity. Plaintiff's argument that Simon was somehow aware that he was the person who filed the anonymous OSHA complaint is founded on nothing more than pure speculation, and as stated by the court in Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005), "unsupported speculation does not meet a party's burden of producing some defense to a summary judgment action."

In summary, Plaintiff's "complete personnel file" had OSHA correspondence in it as of June 2009, but such OSHA

correspondence was not in the file as of June 2008, when Plaintiff was terminated. The record before the Court bears no indication that Simon, the decision-maker, was aware of the protected conduct when she terminated Plaintiff.

### iii. Cat's Paw Theory of Causal Connection

In the alternative to Plaintiff's argument that Simon had actual knowledge of Plaintiff's OSHA complaint when she terminated him, Plaintiff argues that Simon was influenced to terminate Plaintiff by others who had a discriminatory and retaliatory animus toward Plaintiff. Plaintiff's theory is known as the cat's paw theory, and such theory of causation was described in McShane v. Gonzales, 144 F. App'x 779, 791 (11th Cir. 2005), as follows: "We have determined that, although causation may be established, even when the person with the unlawful animus is not the decision-maker, the actual decision-maker must have acted in accordance with this person's decision, without the actual decision-maker himself evaluating the employee's situation." Id. (citing Llampallas v. Mini-Circuits Lab., Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)).

The McShane court further remarked, "In a cat's paw situation, the person with the unlawful animus clearly causes the tangible employment action, regardless of which individual

signs the employee's walking papers." 144 F. App'x at 791 (internal citations omitted). In essence, the cat's paw theory is an alternative theory to establish causation when the decision-maker is not aware of the protected activity but is unduly influenced by a person who has retaliatory animus toward the employee.

The Court determines that Plaintiff's cat's paw arguments are not supported by the record. Simon indicated that she "alone" made the decision to terminate Plaintiff and, prior to doing so, she conducted her own, independent investigation. (Simon Dep., Doc. # 34-1 at 54; Simon Supp. Decl., 45-1).

Although Plaintiff indicates that Kool had retaliatory animus toward Plaintiff, Kool filed a declaration in which he stated, "I did not recommend to Pearl Simon that she terminate Trussell's employment. I did not play any part in that decision. Prior to Trussell's termination, I never discussed with Pearl Simon any alleged safety-related complaints made by Trussell." (Kool Decl., Doc. # 29-3 at ¶¶ 2-3). Likewise, Barbara Shaw filed a declaration explaining that she did not recommend that Simon terminate Plaintiff and did not discuss

Plaintiff's safety issues with Simon. (Shaw Decl., Doc. # 29-4 at ¶ 3-4).[4]

The cat's paw theory cannot work under the circumstances of this case because Simon conducted her own investigation and was not influenced by others in making her decision to terminate Plaintiff.

Upon due consideration, the Court finds that Plaintiff did not establish his prima facie case because the required element of a causal connection is missing. The Court could conclude its analysis here, however, it chooses not to do so. In an abundance of caution and in an effort to completely resolve the issues before this tribunal, the Court will address Defendant's proffered non-retaliatory reasons for terminating Plaintiff. As will be demonstrated below, even if Plaintiff had established a prima facie case of retaliation under the FWA, Defendant must prevail in this action because Plaintiff is not able to show that Defendant's non-retaliatory reasons for terminating Plaintiff are a pretext for unlawful retaliation.

---

[4] Sylvester filed a declaration stating that, while she was the one that showed Simon the client letters, she "did not recommend that Ms. Simon terminate Trussell." (Sylvester Decl., Doc. # 29-1 at ¶¶ 4-5).

**B.** **Defendant had a Legitimate and Non-Retaliatory Reason for Terminating Plaintiff**

If a plaintiff successfully establishes a prima facie case, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action it took. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, retaliatory conduct. Id. Assuming, arguendo, that Plaintiff had established a prima facie case under the FWA, Defendant still prevails in this case because it has provided a legitimate, non-retaliatory reason for Plaintiff's termination, and Plaintiff has not shown that the reason is pretextual.

As outlined in detail above, Defendant terminated Plaintiff for two serious violations of Defendant's company policies, conduct absolutely unrelated to Plaintiff's OSHA complaint.

Plaintiff appears to argue that he did not technically violate one of the company policies (the policy barring distribution of unapproved written materials) arguing that his former supervisor, Jacquelyn Connell, approved the client letters. However, the Court need not consider this argument.

It is not disputed that Simon believed that Plaintiff violated the company policies at issue.

A termination based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred. EEOC v. Total Sys. Serv., 221 F.3d 1171, 1176-77 (11th Cir. 2000)("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.") Under this tenant, even if Plaintiff actually did get prior approval for sending the unauthorized client communication by his former supervisor, his termination for sending the client communication would not be actionable because Defendant was operating under the belief that such communication was, in fact, unauthorized. Further, as stated by the court in Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1341 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision."

This Court grants summary judgment in favor of Defendant because Plaintiff has failed to establish a prima facie case under the FWA. In addition, Defendant has come forward with a proffered legitimate and non-retaliatory reason for terminating Plaintiff, and Plaintiff has failed to come forward with evidence to refute Defendant's proffered

legitimate and non-retaliatory business decision to terminate Plaintiff.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 28) is **GRANTED**.

(2) The Clerk is directed to enter Judgment in Defendant's favor and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>11th</u> day of June 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record